# EXHIBIT J

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:08-CV-80736-KAM

JANE DOE 1 and JANE DOE 2,

    Petitioners,

vs.

UNITED STATES OF AMERICA,

    Respondent.

_____/

### ORDER DENYING INTERVENOR'S MOTION FOR A PROTECTIVE ORDER

This cause is before the Court on Intervenor Jeffrey Epstein's Unopposed Motion for a Supplemental Protective Order. (DE 261). The once-unopposed motion is now opposed by Petitioners (DE 298) and prospective intervenors the Palm Beach Post and Palm Beach Daily News (the Media) (DE 305).[1] Considering the positions of the parties and intervenors, the Court concludes that the proposed supplemental protective order should not issue.

### I. Background

This is a case against the United States for allegedly violating the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, by failing to involve Petitioners (and other similarly situated victims of Intervenor Epstein) in the process that ultimately led to a federal non-prosecution agreement between the Government and Epstein. (DE 1). The parties and intervenors have debated, and continue to debate, the discoverability and discloseability of correspondence documents that evidence just exactly what transpired between the Government, Epstein, and their

---

[1] The Court is granting the Media's motion to intervene and will consider its arguments against the protective order accordingly.

respective attorneys.

In March 2011, Petitioners moved "to allow use of correspondence between the U.S. Attorney's Office and counsel for Jeffrey Epstein" to prove their CVRA case. (DE 51 at 1). Petitioners argued that the correspondence was relevant as it "shows that the U.S. Attorney's Office was aware of its statutory obligation to inform the victims of the non-prosecution agreement," and that they should be allowed to use it "as it sheds important light on the events surrounding the non-prosecution agreement, which are central to the victims' arguments that the U.S. Attorney's Office violated their rights." (Id. at 5, 6). Intervenor Epstein and his attorneys opposed the motion and sought a protective order, arguing that "case law as well as sound and substantial policy considerations prohibit disclosure of the letters and emails prepared by Mr. Espstein's lawyers during plea negotiations with the government, and require that the letters and emails that Jane Doe 1 and Jane Doe 2 already have remain confidential." (DE 162 at 1; see also DEs 160, 161).

On June 18, 2013, this Court rejected the intervenors' concerns and granted Petitioners' motion:

> Accordingly, the court rejects the privileges asserted by intervenors as bases for maintaining the correspondence and related pleadings incorporating the correspondence under seal in this proceeding. Finding the asserted privileges inapplicable, the court finds no legitimate compelling interest which warrants the continued suppression of this evidentiary material under seal in this proceeding, and shall therefore grant petitioners' motion to unseal the correspondence. While the court shall also grant the petitioners' motion to use the evidence as proof of alleged CVRA violations to the extent it shall allow petitioners to proffer the evidence in support of their CVRA claims, this order is not intended to operate as a ruling on the relevance or admissibility of any particular piece of correspondence, a matter expressly reserved

2

for determination at the time of final disposition.

(DE 188 at 9-10) (internal citation omitted). The Court then ordered that discovery recommence (DE 189 at 14) and ordered the Government to "[p]roduce responsive documents . . . encompassing any documentary material exchanged by or between the federal government and persons or entities outside the federal government (including without limitation all correspondence generated by or between the federal government and Epstein's attorneys)" (DE 190 at 2).

Intervenor Epstein and his attorneys challenged these orders in an interlocutory appeal to the Eleventh Circuit Court of Appeals. (DEs 194, 195, 196). The Eleventh Circuit affirmed this Court's orders and lifted its stay on the order compelling the disclosure of the correspondence. Jane Doe No. 1 v. United States of America, 749 F.3d 999, 1010 (11th Cir. 2014). The court held that "[n]o privilege prevents the disclosure of the plea negotiations." Id. at 1008. Specifically, the court held that "Federal Rule of Evidence 410 does not protect against the discoverability of plea negotiations," and, even if it did, Petitioners "intend to admit the correspondence to prove violations of the Act allegedly committed by the United States, not 'against' Epstein," whom Rule 410 protects. Id. at 1008. The court also rejected arguments that the correspondence was protected under the work-product privilege or a common-law privilege for plea negotiations. Id. at 1008-10. "Although plea negotiations are vital to the functioning of the criminal justice system, a prosecutor and target of a criminal investigation do not enjoy a relationship of confidence and trust when they negotiate. Their adversarial relationship, unlike the confidential relationship of a doctor and patient or attorney and client, warrants no privilege beyond the terms of Rule 410." Id. at 1009.

3

Thereafter, Intervenor Epstein moved for a Protective Confidentiality Order, arguing that, although the Court (and Eleventh Circuit) ruled that Petitioners could <u>discover</u> the correspondence at issue, the Court should "bar the Plaintiffs from disseminating and/or publically disclosing the substance of the [correspondence] absent further order of the Court." (DE 247 at 4). Epstein sought a protective order which "(1) limits the dissemination of [the correspondence at issue in the Court's June 18, 2013 Order (DE 188)] to a designated list of the Plaintiffs' counsel and support staff, and (2) prohibits any party from filing pleadings, briefs, memorandums or exhibits purporting to reproduce, quote, paraphrase or summarize any [of this correspondence] or portions thereof, absent leave of the Court to file the document or portion thereof under seal." (<u>Id.</u> at 1; <u>see also</u> DE 247-1).

On September 22, 2014, this Court granted Epstein's request for a protective order in part and denied it in part. (DE 255). The Court held as follows:

> Epstein argues that good cause exists for protecting the correspondence because this is a "high profile" case, and petitioners' counsel has made numerous comments to the press about this case in the past. The Court finds that Epstein has shown good cause to prevent potential dissemination of the correspondence between the government and the intervenors to the press for the purposes of generating publicity. Accordingly, the provisions [of the proposed protective order] that would limit disclosure of the correspondence in question to the proposed list of people are acceptable. However, the Court finds the proposed requirement to seek leave of Court to seal the filing every time a party files a motion is overly restrictive and that it will inhibit the administration of this case. Any party may file any document subject to the limited protective order in connection with any motion when such document is relevant to the prosecution or defense of any motion.

(DE 255 at 4-5). The Court declined to enter the proposed protective order; however, it invited

4

"the parties or Epstein [to] propose another protective order consistent with this opinion." (Id. at 5).

Neither the parties nor Epstein submitted a proposed protective order consistent with the Court's September 22, 2014 opinion (DE 255). Rather, on October 8, 2014, Epstein filed the instant motion for a "supplemental protective order." (DE 261). The motion proposed the entry of a protective order "that would expand the limited Protective Order allowed in [the Court's] decision Granting in Part and Denying in Part the Intervenors' Motion for a Protective Confidentiality Order. [D.E. 255 at 4]." (Id. at 1). In particular, this expanded protective order would "require that any party would be required to file under seal any portion of the plea negotiation correspondence between the Government and Epstein's counsel, whether offered as an exhibit or quoted from in the content of a pleading or motion." (Id.). As this proviso seemed to conflict with the Court's earlier ruling that "[a]ny party may file any document . . . in connection with any motion" without first seeking leave to seal (DE 255 at 4-5), and the general policy that judicial filings be open to the public, the Court requested justification as to why a preemptive seal on filed documents was necessary in this case. (DE 286).

Intervenor Epstein responded with his justifications for a temporary seal on filings that utilize the correspondence. (DE 295). Petitioners, who once did not oppose such a seal, responded with their position that the correspondence should be filed in the public record. (DE 298). The Media also responded with their reasons for why a temporary seal on public filings should not issue. (DE 305).

## II. Discussion

A district court has "broad discretion . . . to decide when a protective order is appropriate

5

and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 35 (1984) (discussing Fed. R. Civ. P. 26(c)); see also F.T.C. v. AbbVie Prods. LLC, 713 F.3d 54, 58 (11th Cir. 2013) (noting that district court has "considerable discretion to modify its own protective order"). Although broad, the court's discretion is not unbounded: the court must take care to apply the correct legal standard and follow the proper procedures in determining whether a protective order should issue. See Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1309 (11th Cir. 2001).

**A.**     **Legal Standard**

Intervenor Epstein argues that the proper legal standard is the "good cause" standard found in Federal Rule of Civil Procedure 26(c). (DE 295 at 4-5). He argues that the Court aimed too high when it requested that he demonstrate "extraordinary circumstances or particularized needs" in its order requesting justification for a protective order. (Id. at 4). The Court agrees that, under the principles espoused in Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304 (11th Cir. 2001), the "good cause" standard governs the request for a protective order under these circumstances.

In Chicago Tribune, the Eleventh Circuit held that, once discovery materials have become subject to a protective order under Rule 26, "the fact that [the] sealed material is subsequently submitted in connection with a substantive motion does not mean that the confidentiality imposed by Rule 26 is automatically foregone." Id. at 1313. The issue of whether previously sealed discovery materials should be disclosed when attached to public filings "requires the court to balance the respective interests of the parties . . . [which] may be resolved by the Rule 26 good cause balancing test." Id. "This standard requires the district court to balance the party's interest

6

in obtaining access against the other party's interest in keeping the information confidential." Id. Whether good cause exists for a protective order "is a factual matter to be decided by the nature and character of the information in question," and due regard may be given to media entities' "contention that disclosure serves" a legitimate public interest. Id. at 1315.

These standards guide the Court's determination whether a protective order should issue concerning disclosure of the correspondence in the court file. The parties and intervenors operate under the assumption that a "Protective Confidentiality Order [is] presently in place" regarding the disclosure of the correspondence at issue. (DE 295 at 3 (citing DE 255 at 4); see DE 298 at 3). Therefore, whether materials subject to that order should now become part of the public record is governed by the good cause standard of Rule 26. Chicago Tribune, 263 F.3d at 1313. For the following reasons, the Court concludes that the balance of interests does not favor imposing the proposed supplemental protective order.

**B.      Interest in Obtaining Access**

Intervenor Epstein's supplemental protective order seeks to "provide . . . protection when [correspondence] documents are converted into exhibits and filed as a public record with the Court." (DE 295 at 3). That is, he seeks a preemptive seal on exhibits that are attached to a motion for the ostensible purpose of aiding the Court in resolution of that motion. When "discovery material [is] filed in connection with pretrial motions that require judicial resolution of the merits," the common-law right of access attaches. Chicago Tribune, 263 F.3d at 1312. Such materials—placed in the record to materially advance the judicial resolution of the merits—play a key role in informing the public of the grounds upon which the district court bases its adjudicative decision. See Travelers Indem. Co. v. Excalibur Reinsurance Corp., No. 11-cv-

7

1209, 2013 WL 4012772, at *10 (D. Conn. Aug. 5, 2013) (Discovery documents are not judicial documents subject to a presumptive right of access because, "prior to admission into the record in support of a motion or as evidence at trial, [they] play no role in the performance of Article III functions of a federal judge.") (internal quotation marks omitted) (emphasis added).  Importantly, the common-law right of access imposes a "general presumption that," once materials are presented to the court for "judicial resolution of the merits" of a case, the public should be afforded the right to inspect and copy those documents.  AbbVie Prods. LLC, 713 F.3d at 62-63.

These principles weigh against the Intervenor's request for a temporary blanket seal on public filings.  The Media argues that the correspondence in question touches a "question of profound public concern," i.e., whether the justice system failed to afford Epstein's victims the rights to which they were entitled.  (DE 305 at 2).  The Court agrees that questions concerning the federal justice system are of significant public concern.  See, e.g., Hyland v. Wonder, 972 F.2d 1129, 1137 (9th Cir. 1992) ("[A]buses, inefficiency, threats to public safety, potential civil rights violations, and incompetence of public law enforcement officials . . . . are of vital interest to citizens in evaluating the performance of their government."); Floyd v. City of New York, 283 F.R.D. 153, 159 (S.D.N.Y. 2012) (case involving the unfair treatment of participants "in the criminal justice system" "presents an issue of great public concern"); Comm. On The Judiciary U.S. House of Representatives v. Miers, 575 F. Supp. 2d 201, 209 (D.D.C. 2008) (stay pending appeal denied because stay "may leave important public concerns regarding the nation's federal criminal justice system unaddressed.").  The Media's interest in disclosure regarding the appropriate resolution of this question is therefore entitled to significant weight.

Epstein argues that much of the correspondence is irrelevant to answering this question.

8

(DE 295 at 14). According to him, "[w]hether the plaintiff's CVRA rights were violated is an issue that is extrinsic from the detailed exchanges of emails and letters that constitute the plea and non-prosecution negotiations between Mr. Epstein's counsel and the government." (Id. at 9). The Court disagrees: it is likely that much of the evidence concerning whether the Government violated the Petitioners' CVRA rights by allegedly concealing from them the plea negotiations will come from the plea negotiations themselves.[2] As Petitioners point out, "the victims have previously alleged that (for example) the defense attorneys pushed prosecutors to agree to a confidentiality provision that illegally kept the non-prosecution agreement secret from the victims—and the public. Allowing the issue to be litigated in public pleadings . . . promotes public confidence that these important issues are being handled appropriately by the Court." (DE 298 at 6). The Media agrees that the "plea negotiation correspondence will be relevant to the central issue in this case—whether the Plaintiffs were afforded their rights under the Crime Victims' Rights Act." (DE 305 at 2). The correspondence at issue cannot be said to be altogether "extrinsic" to Petitioners' claim; it is likely that some of what was said touches matters of central importance in this case.

Moreover, the Court finds that the procedure that Epstein proposes—temporarily sealing all correspondence filed until a party or the public moves to unseal it (DE 295 at 15)—is overly restrictive and threatens to inhibit the administration of this case, especially in light of the Petitioners' indication that they now oppose sealing the correspondence in public filings. The procedure—filing under seal, with the inevitable accompaniment of a motion to

---

[2] The Court does not decide the relevance or admissibility of any particular piece of evidence that this time, and no statement from this Order should be construed a ruling or indication in that regard.

9

unseal—resembles the procedure that the Court rejected in Epstein's initial proposed protective order—seeking leave to seal each time a party wishes to file a piece of the correspondence.

In sum, the Court finds that the public has a legitimate interest in the issues presented in this case and in having access to the materials presented before the Court for resolution of those issues. This interest is entitled to significant weight.

**B.      Interest in Keeping Correspondence Confidential**

Intervenor Epstein argues that the correspondence, which has been held non-privileged, should nonetheless be "afforded protection against public dissemination in [this] high-profile case [because] there are valid heightened concerns that voluminous settlement negotiations will be dumped in the court record simply to make them available to the gossip media." (DE 295 at 10). He offers two primary reasons for a seal: (1) the "longstanding tradition" that plea and settlement negotiations are confidential, and his expectation that they would remain so (id. at 10, 12); and (2) the harm that would befall him and his counsel if Petitioners are allowed to engage in a wholesale "dump" of sensitive documents into the public record (id. at 13-15). The first set of reasons has been rejected as they relate to Epstein's argument that the correspondence was privileged, and they remain unavailing as far as confidentiality is concerned. The Court finds that the threat of abusive filings is better addressed by means other than a preemptive seal on public filings.

**1.      Plea Negotiation Confidentiality**

Intervenor Epstein argues that "[p]lea negotiations and settlement communications have no tradition of being publically accessible," and that "serious Sixth Amendment implications," the spirit of Federal Rule of Evidence 410, and the "environment of confidentiality" fostered by

10

Rule 410 and Federal Rule of Criminal Procedure 11 indicate that the plea negotiation correspondence should "be protected from future use by an adversary." (DE 295 at 10-12).

These alleged justifications—together or separately—do not support a prevailing interest in keeping the plea negotiation correspondence confidential. As the Eleventh Circuit has already held, Rule 410 does not bar disclosure of the correspondence (at trial or otherwise) because "Epstein cannot invoke Rule 410 because he pleaded guilty to state charges . . . and has not withdrawn those pleas." Doe No. 1, 749 F.3d at 1008. Rule 11 says nothing about whether plea negotiation materials that lead to a guilty plea should be kept confidential. And, although Epstein argues that the correspondence should be "protected from future use by an adversary" (DE 295), this Court has already held that Petitioners may make such "use" of that correspondence as necessary (DE 188 at 10) against their adversary in this case, the Government. Cf. Doe No. 1, 749 F.3d at 1008 ("The victims intend to admit the correspondence to prove violations of the Act allegedly committed by the United States, not 'against' Epstein. And even if rescission of the non-prosecution agreement abuts Epstein's interests, the purpose of the admission does not change. Rule 410 does not bar disclosure of the correspondence written by the attorney-intervenors."). The Court rejects these grounds for imposing a confidentiality protective order in this case. (DE 295 at 10-12).

Epstein argues that the Court should shield the correspondence from public disclosure because he and his counsel had "and continue to have a reasonable expectation of confidentiality in their settlement negotiations with the government." (DE 295 at 12). The Eleventh Circuit rejected similar reasoning as it related to Epstein's claim that the correspondence was privileged: "Although plea negotiations are vital to the functioning of the criminal justice system, a

11

prosecutor and target of a criminal investigation do not enjoy a relationship of confidence and trust when they negotiate. Their adversarial relationship, unlike the confidential relationship of a doctor and patient or attorney and client, warrants no privilege beyond the terms of Rule 410." Doe No. 1, 749 F.3d at 1009. The Court finds no support (and Epstein cites none) for the proposition that a court must respect a suspect's unilateral expectation that he shared a "relationship of confidence and trust" with the prosecutor, where no such relationship existed by operation of law. In fact, Rule 410 serves to inform suspects (and their attorneys) that plea discussions are subject to admissibility in court (and thus open to the light of day) if they ultimately lead to a guilty plea that is not later withdrawn. Because this potential is present in every plea negotiation, the Court finds no support in Epstein's purported reasons for keeping such discussions confidential after a guilty plea is reached. (DE 295 at 13).

The Court finds no principled reason—in longstanding tradition or otherwise—for holding that plea negotiations that lead to a guilty plea, not withdrawn, are confidential, especially where things said in those negotiations are potentially relevant to whether the federally protected rights of others were violated. Intervenor Epstein's interest in keeping the correspondence confidential is thus entitled to little weight.

### 2. Protection Against Abusive Filings

Intervenor Epstein argues that a preemptive seal is necessary to prevent a wholesale "dump" of irrelevant documents into the file, which are offered for no purpose but to further sensationalize this case.[3] (DE 295 at 1-4; 14-15). The Court is cognizant of this concern. Even

---

[3] The document that Epstein argues exemplifies this concern was previously stricken from the record. (DE 324 at 10 (striking DE 293)).

12

so, the Court does not find that it is necessary to place a preemptive seal on the filing of every piece of correspondence that may be pertinent to a matter fairly presented for judicial resolution by this Court.

The Court finds that the parties are in the best position to police their conduct—as officers of the Court with sworn professional responsibilities—when it comes to placing material in the public record. Every written submission and filing must be submitted for a proper purpose, see Fed. R. Civ. P. 11(b)(1), such as materially advancing judicial resolution of an issue that is pertinent to this litigation. Relevancy is a broad term; however, it is not without its clearly acceptable limitations. Relevant evidence must, for instance, advance the determination of a "fact of consequence" in the action. Fed. R. Evid. 401(b). As the Court views it—and Petitioners[4] and the Media[5] seem to agree—the facts of consequence that most clearly relate to this action—and which therefore have the most support for being made a part of the public record—are those statements in the plea negotiations that relate to the rights of the victims, i.e., the Government's knowledge, and alleged disregard, of the rights which it owed the victims under the CVRA. Parts of the correspondence that relate to the victims' rights in this regard, or that raise inferences that the Government had known obligations and disregarded them, are most appropriate for public filing as they lead to judicial resolution of this central issue.

---

[4] Petitioners contend that the correspondence may show "that (for example) the defense attorneys pushed prosecutors to agree to a confidentiality provision that illegally kept the non-prosecution agreement secret from the victims . . . ." (DE 298 at 6) (emphasis added).

[5] The Media contends that the correspondence "will be relevant to the central issue in the case—whether the Plaintiffs were afforded their rights under the Crime Victims' Rights Act . . . ." (DE 305 at 2) (emphasis added).

13

Undoubtedly, the amount of correspondence now made available to Petitioners[6] contains reams of documents that—while interesting on some level—bear no arguable pertinence to any issue necessary for judicial resolution of this case. No judicial purpose will be served by placing such documents into the court record; therefore, doing so should be avoided. Also, documents that may be pertinent by the line, paragraph, or page, may not be pertinent by the entire multi-page document, file-folder, or box-full. The pertinent portions—and portions that are in good faith necessary for context—should be submitted, and the rest omitted from public filings. Wholesale dumps of multi-page documents for the purpose of supporting brief quotations should be avoided.

Counsel—as officers of the Court with sworn professional responsibilities—are circumscribed by several principles (including those espoused by the Court above) regarding what documents should appropriately be made part of the public record. Counsel must not present any document, or fail to remove unnecessary portions of a document, "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Prior to filing certain motions, counsel is required to confer "with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve by agreement the issues to be raised in the motion." S.D. Fla. Local R. 7.1(a)(3) (emphasis added). At this required conferral, counsel should discuss what documents—or what

---

[6] The victims report that they "have now obtained the full text of correspondence between the defense attorneys and prosecutors." (DE 298 at 6). Nothing within this Order should be construed as a ruling regarding the disclosure of documents that are subject to a claim of privilege that has yet to be decided by this Court.

14

portions or documents—are necessary to support the proposed motion.[7] Dispositive motions are not subject to this required conferral; however, counsel should be aware that filings either in support or defense of motions for summary judgment should relate to the "material facts" of the case. Fed. R. Civ. P. 56(a).

The Court stands ready to police the filings in this case as well. The parties and intervenor may move to sanction or to strike, should they have a good faith basis for believing that another party has engaged in abusive filing. And, as the parties are aware, the Court may strike on its own "any redundant, immaterial, impertinent, or scandalous matter" from the record. (DE 324 at 4) (citing Fed. R. Civ. P. 12(f)). The Court finds that these remedies are sufficient to address the potential for abuse that Intervenor Epstein envisions. See F.T.C. v. AbbVie Prods. LLC, 713 F.3d 54, 64 (11th Cir. 2013) (noting that Rules 11 and 12(f) may be sufficient protections from abusive filings in appropriate cases). The parties should conduct themselves accordingly.

### III. Conclusion

In sum, the Court finds that Intervenor Epstein has not demonstrated that good cause exists for imposing a supplemental, expanded protective order preemptively sealing the public filing of any and all correspondence in this case. The interest in public disclosure outweighs Epstein's interest in shielding the non-privileged correspondence from public view. Other remedies may prove effective in preventing abusive filings in this case. The Court denies Epstein's request for a stay of this order pending appeal. (DE 295 at 16). However, the Court

---

[7] This should not be read as a requirement that counsel must certify whether there is agreement regarding what documents may be submitted, or as a grounds for a party or intervenor to object to the submission before the motion is filed.

will temporarily stay its ruling giving Epstein time to seek a stay from the Court of Appeals, should an interlocutory appeal issue.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Intervenor Epstein's Unopposed Motion for a Supplement Protective Order (DE 261) is **DENIED**; his request for a stay pending appeal (DE 295 at 16) is also **DENIED**.

2. The effect of this Order is temporarily **STAYED** up to and including Monday, April 27, 2015, in order to permit Intervenor Epstein an opportunity to renew his request for a stay before the Eleventh Circuit Court of Appeals. If Epstein applies for a stay in the Court of Appeals on or before April 27, 2015, the temporary stay imposed by this Order shall remain in effect pending the Eleventh Circuit's disposition of the application for a stay.

3. The Media's Motion to Intervene to Oppose Intervenor Epstein's Motion for Entry of a Supplemental Protective Order (DE 305) is **GRANTED**.

**DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 15th day of April, 2015.

_____
KENNETH A. MARRA
United States District Judge

16