Jack Scarola
Florida Bar No.: 169440
Attorney E-Mail(s):  jsx@searcylaw.com and
                              mep@searcylaw.com
Primary E-Mail: _scarolateam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Fax:    (561) 383-9451

*Attorneys for Bradley J. Edwards*

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re:   SUBPOENA  TO  BRADLEY  J. EDWARDS | **BRADLEY J. EDWARDS'S REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER** |
| Underlying case: | |
| VIRGINIA L. GIUFFRE, Plaintiff | Case No. 0:16-mc-61262-JEM |
| v. | |
| GHISLAINE MAXWELL, Defendant | |
| No. 15-cv-07433-RWS (S.D.N.Y.) | |

Subpoena respondent Bradley J. Edwards, a non-party and attorney for the Plaintiff in the

*Giuffre v. Maxwell* action, hereby files this reply in support of his motion to quash.

In her response to the motion, Maxwell withdraws several of her requests for production in

the wake of adverse rulings from Judge Sweet in the Southern District of New York.  With regard

to the remainder, Edwards will clearly be unduly burdened, as a non-party, if he were required to

conduct burdensome searches for documents for no real purpose.  With regard to the first two requests, for example, relating to documents from the Dershowitz case, Maxwell now admits that she already possesses some of the information that she seeks to force Edwards to assemble. Maxwell also fails to substantively or effectively address the other arguments that Edwards presents regarding why the subpoena creates an undue burden on him.  The Court should accordingly grant Edwards's motion to quash in its entirety.

**RESPONSE TO MAXWELL'S BACKGROUND FACTS.**

In his motion to quash, Edwards specifically advanced nineteen facts relevant to his motion.  *See* Motion to Quash ("MTQ") at 2-6.  Defendant Maxwell does not contest any of these facts, and the Court should therefore deem them admitted in ruling on Edwards's motion.

Maxwell, however, presents some additional alleged "background" facts which she asserts are relevant to determining the motion.  She presents a grossly distorted picture of some of the key events, and so a brief response is appropriate.

<u>The CVRA Case</u>

The facts relevant to this issue begin in 2008, when attorney Bradley J. Edwards (soon joined by co-counsel Professor Paul Cassell) on a *pro bono* basis, filed an action in the Southern District of Florida under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771.  Filed on behalf of Jane Doe 1 (and later Jane Doe 2) the CVRA action alleged that federal government had failed to protect the rights of Jane Doe 1 and other-situated victims of sex crimes committed by Jeffrey Epstein, a politically-connected billionaire.  *See* Complaint filed in Jane Doe 1 v. United States, No. 9:08-cv-80736, DE 1 (S.D. Fla. July 7, 2008).  The victims alleged that, while they were underage girls, Epstein and his co-conspirators sexually abused them in his Florida mansion under the guise of obtaining "massages."  The victims further alleged that the Government

concealed from them a plea bargain under which the federal government extended to Epstein a non-prosecution agreement (NPA) in exchange for Epstein's guilty plea to low level state offenses. The CVRA case has been litigated for nearly eight years, with litigation continuing to date. Jane Does 1 and 2 have achieved many precedent-setting victories in the case, including a ruling that the CVRA rights of victims could apply before charges were filed, *Does 1 and 2 v. United States*, 817 F.Supp.2d 1337 (S.D. Fla. 2011);[1] that they had standing to challenge the non-prosecution agreement reached between the Government and Epstein, *Jane Does 1 and 2 v. United States*, 950 F.Supp.2d 1262 (S.D. Fla. 2013); and that Epstein's plea negotiations were not protected from disclosure by any federal rule of evidence, *Does v. United States*, 749 F.3d 999 (11th Cir. 2014). Congress has also followed the developments in the case closely, recently amending the CVRA to insure that in the future crime victims receive notice of any non-prosecution agreement entered into by the Government. *See* Pub. L. 114-22, Title I, § 113(a), (c)(1), May 29, 2015, 129 Stat. 240, 241 (adding 18 U.S.C. § 3771(a)(9) to give victims "[t]he right to be informed in a timely manner of any plea bargain or deferred prosecution agreement).

As part of the CVRA case, on December 30, 2014, Edwards and Cassell filed a Motion Pursuant to Rule 21 for Joinder in the Action on behalf two additional victims: Jane Doe 3 and Jane Doe 4. (Jane Doe 3, Ms. Virginia Giuffre, subsequently decided to reveal her name.) The joinder motion argued that Jane Does 3 and 4 should be allowed to join the two existing plaintiffs in the action because they had suffered the same violations of their rights under the CVRA. *See* Pagliuca Decl., Exhibit A, Jane Does' 3 and 4 Joinder Motion. To establish that they were "victims" of Epstein's sex crimes with standing to join the suit, Jane Does 3 and 4 alleged that

---

[1] *See generally* Paul G. Cassell, Nathanael J. Mitchell & Bradley J. Edwards, *Crime Victims' Rights During Criminal Investigations? Applying the Crime Victims' Rights Act before Criminal Charges are Filed*, 104 J. CRIM. L. & CRIMINOLOGY 59 (2014).

they had suffered sexual abuse from Epstein and others. 

Maxwell asserts – without any supporting evidence or argument – that Edwards and Cassell filed this motion for the "purpose" of creating additional litigation.  Maxwell Resp. at 5. That is a spurious claim about counsel's alleged improper motivation that lacks any support.  As is clear from the face of the motion to join, the legitimate purpose was to secure Jane Doe 3 and Jane Doe 4's participation in the CVRA lawsuit.

---

[3]  This document is currently restricted/under seal in the CVRA case, although an order sealing it is not found in the Court record so far as can be determined.  In light of the sealing of the document, we have treated the document as sealed.



Several months later, on April 7, 2015, the Court (Marra, J.) denied Jane Doe 3 and Jane Doe 4's motion for joinder.  *See* Pagliuca Decl., Ex. C,  Order denying Jane Doe 3's Motion to Join.  With regard to the eight separate issues as to which the allegations ███████████ were relevant, the Court addressed only the first (establishing "victim" status) and found that the "factual details regarding with whom and where the Jane Does engaged in sexual activities are immaterial and impertinent to this central claim (i.e., that they were known victims of Mr. Epstein and the Government owed them CVRA duties), especially considering that these details involve non-parties who are not related to the respondent Government." *Id.* at 5.[4]  Accordingly, the Court struck the factual details from the victims' pleading as unnecessary at that time.  The Court specifically recognized, however, that the details could be reasserted by the parties to the action – i.e., Jane Doe 1 and Jane Doe 2 – if they could "demonstrate a good faith basis for believing that such details are pertinent to a matter presented for the Court's consideration." *Id.* at 6.  The court also ruled that their right to participation in the case could be achieved by means of appearance as witnesses.  Following the Court's ruling, additional litigation has proceeded in the CVRA case.

---

[4] ████████████████████████████████████████████████

<u>The Dershowitz case</u>

While the CVRA case was moving forward in the Southern District of Florida on behalf of Jane Does 1 and 2, separate litigation developed between the *pro bono* attorneys who had filed the lawsuit (Edwards and Cassell) and Dershowitz.   After Edwards and Cassell filed the joinder motion in the CVRA case, Dershowitz took the airwaves to attack not only Jane Doe 3's allegations against him, but also Edwards and Cassell's decision to file the allegations.   Typical of these attacks was one levelled on CNN, in which Dershowitz alleged:

> If they [Edwards and Cassell] had just done an hours' worth of research and work, they would have seen she is lying through her teeth. . . . They're prepared to lie, cheat, and steal.  These are unethical lawyers.  . . . They can't be allowed to have a bar card to victimize more innocent people.

*Hala Gorani – CNN Live* (Jan. 5, 2015).[5]

 Edwards  and  Cassell  then  filed  a  state  law  defamation  action  against  Dershowitz  in Broward County, Florida.   *See* Pagliuca Decl., Ex. E, Complaint in *Edwards and Cassell v. Dershowitz*.   The complaint alleged that Dershowitz had engaged in a "massive public media assault on the reputation and character" of Edwards and Cassell.  *Id.* at 4.

<u>The Settlement of the Defamation Case</u>

Ultimately, Edwards, Cassell, and Dershowitz agreed to settle their defamation case.  That settlement included both a public statement and confidential monetary payments.  As part of the settlement, Edwards and Cassell withdrew their allegations against Dershowitz in the defamation case contained in the then-pending summary judgment motion.  Edwards Reply Decl., Exhibit 2, Notice of Withdrawal of Summary Judgment Motion.  As explained in the notice of withdrawal of

---

[5]  Available at http://www.cnn.com/videos/world/2015/01/05/wrn-uk-sex-abuse-allegations-alan-dershowitz-intv.cnn.

this motion, "the withdrawal of the referenced filings is not intended to be, and should not be construed as being, an acknowledgement by Edwards and Cassell that the allegation made by Ms. Giuffre were mistaken.  Edwards and Cassell do acknowledge that the public filing in the Crime Victims' Rights Act case of their client's allegation against Defendant Dershowitz became a major distraction from the merits of the well-founded Crime Victims' Rights Act by causing delay and, as a consequence, turned out to be a tactical mistake." *Id.*   Thus, contrary to representations made by Maxwell in her brief (Maxwell Resp. at 7), in settling the case, Edwards and Cassell have *never* reached any conclusion that Ms. Giuffre was mistaken in her allegations.

        Progress in the Underlying Case

        While Maxwell reviews the facts from *other* cases (e.g., the CVRA case and the Dershowitz case), she does not present for the Court any information about the course of *this* case – i.e., the underlying litigation in *Giuffre v. Maxwell*, No. 15-cv-7433 (S.D.N.Y.) (Sweet, J.). Because the course of that litigation is relevant to assessing the need for forcing Edwards to respond to the subpoena, background about this case may be useful.

        Ms. Giuffre's complaint alleged that, after the filing of the joinder motion in which she stated that Maxwell was involved with Jeffrey Epstein in sexually abusing her while she was under the age of 18, Maxwell defamed her by falsely calling her (among other things) a "liar" and by falsely characterizing Giuffre's various statements that Maxwell was involved in sexual abuse with Epstein as "obvious lies."  Discovery then proceeded in the case, including preparations for deposition of Maxwell.  Maxwell repeatedly sought to delay her deposition, filing a motion just four days before her scheduled deposition seeking to delay her deposition to learn about on-going

7

law enforcement investigation of her sex offenses.  *See Giuffre v. Maxwell*, DE 101.[6]  Maxwell

said that she would then be able to decide whether to invoke her Fifth Amendment right to refuse

to answer questions.   DE 101 at 3.   Ultimately, however, Judge Sweet refused to delay her

deposition, and so Maxwell was forced to answer questions under oath about her involvement in

Epstein's sexual abuse of Ms. Giuffre and other minor girls.   During her deposition, however,



---

[6]   This was not the first time Maxwell had sought to avoid being deposed.  In 2009, Brad Edwards served Ghislaine Maxwell with a subpoena for a deposition in a civil case against Jeffrey Epstein. After extensive discussion and coordinating a convenient time and place, as well as ultimately agreeing to a confidentiality agreement prepared by Maxwell's attorney, at the eleventh hour Maxwell's attorney informed Edwards that Maxwell's mother was very ill and that consequently Maxwell was leaving the country with no plans to return. The deposition was cancelled. Yet a short time later, Maxwell was photographed at Chelsea Clinton's wedding in Rhinebeck, New York, confirming the suspicion that she was indeed still in the country and willing to say anything to avoid her deposition.  *See* Edwards Reply Decl., Ex. 1 at 15.

[7] *See also* note 3, *supra* (discussing Ms. Maxwell's complete lack of memory of any of the circumstance surrounding her trip to London with Ms. Giuffre).



**DISCUSSION**

As should be clear from the foregoing recitations of the facts in this case, defendant Maxwell has been unable to present any effective evidence that she was uninvolved in Epstein's sexual abuse of Ms. Giuffre and other minor girls.  Unable to contest the case on its merits, she has resorted to a blizzard of discovery motions – including subpoenas served on Ms. Giuffre's

legal counsel such as Edwards.  The specific issue before the Court is Edwards's motion to quash the subpoena served on him.  That motion should be granted.

## I.  VENUE IS PROPER OVER THE MOTION TO QUASH IN FLORIDA, WHERE EDWARDS RESIDES.

Out of an abundance of caution, it should be noted that venue is proper in this Court over the motion to quash served on Edwards (a Florida resident) in Florida.  We address this issue because, on about June 15, 2016, defendant Maxwell's counsel contacted Edwards' counsel via email, asking for Edwards's consent to a motion to transfer his motion to quash to the U.S. District Court for the Southern District of New York (Sweet, J.,) for decision.  Maxwell's counsel took the position that the motion to quash should be determined by Judge Sweet in New York because he "has addressed all of the discovery issues in the underlying litigation."  Edwards indicated his opposition, in view of the burden that would be imposed on him if he were forced to travel to New York to litigate the issue. A few days later, on June 20, 2016, Judge Sweet issued an order

And on June 23, 2016, Judge Sweet held oral argument on motions in this case, thereafter quashing (for example) a subpoena served by Maxwell on Microsoft and Apple for all of Ms. Giuffre's email accounts.  *See* Edwards Resp. Decl., Ex. 7 at 12, Tr. of Hearing on June 23, 2016.

Following these adverse rulings from Judge Sweet, defendant Maxwell appears to have decided not to file a written motion to transfer this matter back to Judge Sweet.  In the event that she makes such a motion orally, Edwards would note that in 2013, Fed. R. Civ. P. 45(f) was

amended to add protections for non-parties who are subpoenaed to produce materials in litigation conducted far from their residences.  As explained in the Advisory Committee Notes to Rule 45(f), in the absence of consent, a court where the non-party resides may file a motion to quash an unduly burdensome subpoena in the district of his residence.  Thereafter, the court may transfer a motion to quash only "in exceptional circumstances, and the proponent of transfer bears the burden of showing that such circumstances are present. The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions."   Edwards respectfully suggests that the issues regarding his motion to quash should be decided in this district where he resides.

The Court should also be aware that parallel litigation is proceeding in Utah, where Edwards' co-counsel, Cassell, resides.   Defendant Maxwell has served a largely identical subpoena on Cassell in Utah.  Cassell moved to quash the subpoena on grounds similar to those Edwards advances here. On June 30, 2016, the U.S. District Court for the District of Utah (Furse, J.) entered an order transferring Cassell's motion to quash back to the Southern District of New York under Rule 45(f), finding that "exceptional circumstances" existed for transfer.   *In re: Subpoena to Paul G. Cassell*, No. 2:16-mc-00602-DB-EJF, DE 20 (D. Utah).

## II.     EDWARDS'S STATUS AS AN ATTORNEY FOR MS. GIUFFRE DOES NOT MAKE A SUBPOENA UPON HIM PROPER.

At several points in her reply brief, Defendant Maxwell seems to argue that merely because Edwards has served as legal counsel for Ms. Giuffre he then becomes fair game for subpoenas for information.  As the Court knows from other discovery matters it has considered, subpoenas are rarely served on attorneys for parties to a case – and for good reason.  Discovery

requests are typically served on the client, and then the discovery matters are handled from there.

Defendant Maxwell has not been shy about serving voluminous and extensive discovery requests on Ms. Giuffre in the case.  But there is no good reason for additional requests served on her legal counsel, Edwards.  In an attempt to show a reason for departing from the ordinary approach, Ms. Maxwell cites *Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05 Civ. 6430, 2007 WL 4410405 (S.D.N.Y. 2007), in which a subpoena was upheld for an attorney's records. But in that case, the attorney had previously been deposed in connection with a copyright dispute, and testified that in his experience with "other agreements" and "typical record contract[s]", certain issues were typically addressed in separate contacts.  At that point, the deposing party served a subpoena on the attorney, seeking production of those other agreements to which the attorney had referred in his deposition.  In denying a motion to quash, the Court explained that the central issue in the case concerned the interpretation of an agreement between the parties that had been negotiated by the attorney.  *Id.* at *3.  Moreover, the attorney had testified in his deposition about "other agreements," and so a subpoena for the other agreements referred to was appropriate.

Of course, in this case, Edwards has done nothing of the sort.  There is marked difference between inserting oneself into a case as fact witness and inserting oneself into a case as a lawyer to a party.  Despite Defendant Maxwell's repeated attempts to assert that Edwards somehow "voluntarily chose to insert himself in this matter" [as a lawyer] (Maxwell Resp. at 16), the fact remains that this defamation case focuses solely on Maxwell's defamatory statements.

Defendant Maxwell also cites the case of *Romano v. SLS Residential, Inc.*, 298 F.R.D. 103, 111 (S.D.N.Y. 2014).  *See* Maxwell Resp. at 9.  But that case, too, is inapposite, since it does not involve a subpoena directed to an attorney, but rather a subpoena directed to a party.  Maxwell offers no sound for reason for directing her subpoena to an opposing party's legal counsel – a non-

party to the litigation.  As a result, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs" in a Rule 45 inquiry about whether to quash a subpoena as unduly burdensome.  *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014).

**III.    The Court Should Quash Each of the Requests in the Subpoena to Edwards**.

> <u>RFPs #1 and #2 Should be Quashed.</u>

The Court should quash RFPs #1 and #2, which ask Edwards to produce documents that were produced by Dershowitz (or to Dershowitz) as part of discovery in *Edwards and Cassell v. Dershowitz* litigation.   In his motion to quash, Edwards noted that defendant Maxwell could easily obtain the Dershowitz materials from Dershowitz himself.   MTQ at 9-10. In response, defendant Maxwell represents to the Court that information sought is "not available to Ms. Maxwell."  Maxwell Resp. at 6.  This representation is untrue.  *Defendant Maxwell already has Dershowitz discovery materials – materials that must have been provided to her by Dershowitz.* This fact confirms that the discovery requests here are not about obtaining appropriate discovery, but rather about imposing a burden on Edwards as opposing legal counsel.

The fact that defendant Maxwell already possesses Dershowitz discovery materials is demonstrated by her reference to a "recently discovered voice mail" from reporter Sharon Churcher to Cassell.  Maxwell Resp. at 8 (quoting from Feb. 2015 voicemail).  Maxwell is cagey about where she "discovered" this voicemail, but the only way it could have come into her possession is via actions by Dershowitz.  Cassell's lawyer produced the voice mail to Dershowitz

as part of discovery in the Dershowitz litigation.  Presumably, Dershowitz has made it available to Maxwell, directly or indirectly.[8]

Defendant's own brief thus belies her claim that she needs this discovery from Edwards because the materials are "not available" to her – her brief already cites some of this discovery. And now Maxwell asks this Court to force Edwards to painstakingly reassemble all the discovery in the Dershowitz case, collecting the same voicemail she quoted in her brief (and other materials) and producing it to her.  Obviously a subpoena to Edwards cannot be the "best, least burdensome, and most cost effective source for obtaining the information" (Maxwell Resp. at 7) given that Maxwell already possesses that same information.  It is clearly an "undue burden" to force Edwards to collect and produce, for example, a voicemail that defendant Maxwell has already obtained via Dershowitz.  *See Precourt v. Fairbank Reconstruction Corp.,* 280 F.R.D. 462, 467 (D.S.D.2011) ("If the party seeking information can easily obtain the same information without burdening the non-party, the court will quash the subpoena.").

In addition to the fact that Maxwell already possesses Dershowitz discovery materials, she does not deny the main point of Edwards's motion to quash: that it is far simpler for Maxwell to work with her ally Dershowitz on the Dershowitz discovery materials rather than force opposing counsel (Edwards) to assemble them for her.[9]  Indeed, in earlier litigation, Epstein's attorney specifically stated that that there was a "common interest agreement" in place between Dershowitz and Maxwell.  *See* Edwards Decl., Ex. 4 at p. 524 (excerpt from Alan Dershowitz deposition) ("Q: So that I'm clear, there is a joint defense of the allegations regard Ghislaine Maxwell that's New

---

[8] Maxwell is in a joint defense agreement with Epstein, who in turn is in a joint defense arrangement with Dershowitz. Dershowitz, accordingly, could have provided the voice mail to Epstein, who could have then provided it to his former girlfriend and co-conspirator, Maxwell.

[9] Dershowitz would have no shortage of lawyers to assist defendant Maxwell on this point.  Not only was he represented by legal team at a major Washington, D.C., law firm during the litigation, but he also used the services of more than two dozen other lawyers during the case.

York litigation and this defamation case?   [Epstein's Counsel:]   There's a common interest agreement in effect with respect to the New York case and a common interest agreement with respect to this case [e.g., Edwards/Cassell v. Dershowitz].").   Defendant Maxwell quibbles over the precise character of that agreement (Maxwell Resp. at 6), but does not deny the salient point that she and Dershowitz have a close working relationship through their common friend, Epstein. Once again, it is that close relationship that has presumably already allowed Maxwell to get a voicemail produced in Dershowitz discovery.   There is no reason why she can't use that same relationship to smoothly obtain the other materials that are of interest to her.

Maxwell argues, however, that it would require just "a few clicks of a mouse to copy production files."   Maxwell Resp. at 9.   If this claim were true, it would argue for having Dershowitz make those "few" clicks.   Maxwell does not respond, however, to the affidavit from Edwards, explaining that, for him, the Dershowitz discovery was handled by private counsel, Jack Scarola – a Florida attorney who made and received production in various stages over the course of the extensive litigation.   *See* MTQ, Edwards Decl., Ex. 3 (Edwards Decl. at 2).   Maxwell, indeed, appears to concede that Edwards could not produce the documents in question on his own, but instead would be required to retain Scarola for this new legal matter (i.e., responding to a subpoena in a case to which Edwards is not a party, and in which obviously Scarola is not his counsel) and have Scarola piece together the discovery materials.   This could easily cost Edwards personally thousands of dollars in legal fees, an undue burden given that Maxwell already appears to have the information from Dershowitz or could easily obtain it from him.

RFPs #3, #4, and #5 Should Be Quashed

The Court should quash RFPs #3, #4, and #5, which seek discovery materials from the long-running case of *Epstein v. Edwards*.   In his motion to quash, Edwards explained why

production of the materials would be unduly burdensome, given the way in which the materials have been intermingled with other litigation over seven years.  *See* Edwards MTQ at 10-11.  In response, Defendant Maxwell simply asserts that Edwards has not offered factual support for his position.  Maxwell Resp. at 9.  This is simply untrue and, accordingly, Edwards Motion to Quash should be granted by Maxwell has failed to contest the arguments Edwards' raises.

Moreover, in his motion to quash, Edwards explained why the subpoena had to be regarded as unduly burdensome, because it was targeted at him – an opposing lawyer in the case – rather than to Epstein – with whom Defendant has a joint defense agreement.  *See* Edweard MTQ at 11.  Clearly it is far simpler for Defendant Maxwell to obtain these materials from her adversary (a billionaire with legions of lawyers) rather than from her adversary.  Her targeting of Edwards with the subpoena is clearly a tactic designed to burden opposing counsel and should be rejected.

RFP #6 Should be Quashed.

The Court should also quash RFP #6, which asks Edwards to produce documents provided in discovery from the case of *Jane Does #1 et al. v. United States* (S.D. Fla.) – i.e., correspondence between Epstein's defense attorneys and the Government concerning the plea arrangement to be struck between the two.   This request seeks to have Edwards painstaking assemble a complete set of documents that was produced over eight years of complex, *pro bono* litigation.   The correspondence is currently subject to a protective order, obtained by defendant Maxwell's co-conspirator Jeffrey Epstein, entered in the Southern District of Florida, a fact which Edwards noted precluded his ability to comply with the subpoena in this case.  MTQ at 12.

In response, Maxwell remarkably argues that the existence of the protective order is "irrelevant."   Maxwell Resp. at 10.   Maxwell's views of the relevance of the order notwithstanding, Edwards has no choice but to abide by the restrictions currently in place from the

Southern District of Florida.  Maxwell quickly retreats from this far-fetched argument to the fallback position that it "appears" that Edwards is not subject to a protective order.  *Id.*  But as her own hedged language suggests, an order from the U.S. District Court for the Southern District of Florida restricts release of the materials provided to Edwards in discovery.  *See Jane Does v. United States*, No. 9:08-cv-80736 (S.D Fla. 2015), DE 326 at 4 ("On September 22, 2014, this Court granted Epstein's request for a protective order in part and denied it in part. (DE 255). The Court held as follows:      ". . . The Court finds that Epstein has shown good cause to prevent potential dissemination of the correspondence between the government and the intervenors to the press for the purposes of generating publicity. Accordingly, the provisions [of the proposed protective order] that would limit disclosure of the correspondence in question to the proposed list of people are acceptable.").   If Maxwell would like to pursue discovery of the plea bargain correspondence between Epstein's lawyers and the Government's lawyers, then she must first approach the court in the Southern District of Florida to obtain a modification of the protective order.

But, once again, Maxwell's technical quibbling misses the larger point (raised by Edwards in his motion to quash at 12) – that the plea bargain correspondence between Epstein's lawyers and Government prosecutors can be far more easily obtained by simply getting the materials directly from Epstein or the Government.[10]  Maxwell does not dispute that she is in joint defense agreement with her former boyfriend, Epstein, and is presumably working closely with him on this case.  It is an undue burden to force Edwards (a *pro bono* attorney on the CVRA case) to assemble

---

[10] In her response, Maxwell does not address why it would not be possibly to obtain the same materials from the federal Government, rather than from Cassell.  Given the vastly greater resources of the U.S. Government, compared to a law professor handling a *pro bono* crime victims' rights case, it is an undue burden for Maxwell to try and force Cassell to assemble the documents – and, indeed, the sole object of the request appears to be discovery "merely for the sake" of creating a burden, a clear basis for quashing the subpoena.  *See Jones*, 219 F.R.D. at 78.

materials that Maxwell's billionaire boyfriend has at his fingertips and is able to produce (and, indeed, may have already described and produced) to Maxwell.   Defendant Maxwell also notes that, with regard to some discovery efforts in the past, Epstein has invoked his Fifth Amendment right against self-incrimination.   For example, rather than explaining what role Maxwell had in his sex trafficking operations, Epstein took the Fifth.   The Fifth Amendment, however, has absolutely no application to correspondence *between Epstein's lawyers and Government prosecutors*. Obviously, matters discussed with a prosecutor can hardly be claimed to be confidential materials for which a Fifth Amendment privilege applies.

<u>RPFs #7, #8, and #9 Should be Quashed.</u>

RFPs #7, #8, and #9 seek engagement letters between the plaintiff in the case (Virginia Giuffre) and Edwards as her attorney, as well as joint defense or common interest agreements relating to Ms. Giuffre.   Defendant Maxwell has withdrawn her request for these items.

<u>RFPs #10 and #11 Should be Quashed.</u>

The Court should also quash RFPs #10 and #11, which seek documents concerning Edwards's work forming or on behalf of Victims Refuse Silence, Inc. (VRS).   Here again, the intent of these requests appear to be to force Edwards to search for and catalog materials that (to the extent they are not privileged) are available from another source – specifically VRS.  Forcing Edwards to search for these materials will, of course, divert him from performing his duties as an attorney litigating a case against Maxwell.   Indeed, Defendant Maxwell concedes that she has served a subpoena on the VRS itself for various records.  Maxwell Resp. at 11.  The real point of the duplicative request to Edwards, as Defendant herself appears to admit, is to have Edwards assemble exactly the same records and then compare all of his records to those from VRS.  *See id.* ("To the extent [there] are documents that will be produced by Victims Refuse Silence . . . under

the VRS subpoena, Edwards simply needs to state that they are being provided from that source.").  It is an undue burden to force Edwards to duplicate efforts being untaken elsewhere.

Maxwell also does not dispute the affidavit from Edwards, filed with his motion to quash, that "[w]ith regard to any work that I have done on behalf of a Florida corporation, Victims Refuse Silence, Inc. (VRS), that would have been work as an attorney for my client Ms. Giuffre and would, accordingly, be protected by the attorney-client privilege" (not to mention work product protection).  Edwards Decl. [DE 1-1] at ¶ 18.  Given the protected nature of such materials, the real point of the request does not appear to be to actually obtain any discovery of these items, but rather to force Edwards to spend time drafting a privilege log for work that he did for his client. *See* Maxwell Resp. at 11 ("To the extent that any communications are privileged, they can be logged as such.").

It is also hard to understand Maxwell's theory of relevance of these materials held by lawyer Edwards in the first instance.  Whatever bearing Ms. Giuffre's non-profit organization has to this case can (and has been) explored through discovery from her directly.  Defendant Maxwell does not explain why that discovery was somehow inadequate or in need of supplementation.

Finally, as Edwards explained in his motion to quash (at p. 14), these requests are hopelessly vague and overbroad.  The requests seek such things as "disclosures made by You to . . . any person associated with VRS."  Edwards's client, Ms. Giuffre, is plainly a person "associated with VRS," *id.* at ¶ 11, so this request seems to ask for all communications between Edwards and his client, unrestricted as to time and subject.  Clearly, these requests are vague, overbroad, and unduly burdensome – as Maxwell's failure to respond to these arguments seemingly admits.

RFP #12 Should be Quashed.

The Court should also quash RFP #12, which seeks "documents relating to any disclosures made by You [to] Virginia Roberts Giuffre, or consents provided to You by Virginia Giuffre, pursuant to any of the Florida Rules of Professional Conduct." Defendant Maxwell does not dispute that all of these materials would necessarily involve privileged attorney-client communications. *See* Edwards MTQ at 15. Nor does she provide any reason for needing this information or how it could possibly be relevant at trial. This RFP should be quashed as well.

RFP #13 Should be Quashed.

The Court also quash RFP #13, which seeks all documents "concerning any investigation by any law enforcement agency that refer to Ghislaine Maxwell." In her response, Defendant Maxwell attempts to modify her request to exclude production of documents related to any "purported currently pending, unidentified law enforcement investigations." Presumably this narrowing of her request stems from ███████████████████████████████████

███████████████████████████████████████████ What remains of Maxwell's request in the wake of that ruling is unclear, because – if narrowed – the request would seem to apply only to *identified* law enforcement investigations that are no longer pending. But if the request is limited only to "identified" law enforcement investigations, Defendant Maxwell has absolutely no basis

---

[11] In her pleading, Defendant Maxwell tries to cast doubt on the existence of on-going law enforcement investigation of her sex crimes by using the word "purported" to describe the investigation. Maxwell Resp. at 13. However, as Maxwell well knows, Ms. Giuffre submitted materials concerning the on-going law enforcement investigation to Judge Sweet for in camera review, along with request that the materials not be disclosed to Maxwell to avoid compromising the investigation. ███████████████████████████████████████████████████

for asking Edwards (a non-party) to produce government records.  Maxwell can simply make appropriate public records requests to the government agencies and obtain the materials that way. *See, e.g., Brown v. City of Syracuse,* 648 F.Supp.2d 461, 466 (N.D.N.Y.2009) (when balancing hardships between requesting party and non-party, court should consider whether there are other sources for obtaining the material).  It also hard to tell what a "pending" investigation would be in the newly-narrowed request – particularly with reference to the Florida federal investigation, which remains in litigation about whether additional prosecutions against Epstein and his co-conspirators are proper in Florida.  That investigation would, accordingly, appear to be "pending" and therefore not covered by newly-narrowed request.

Undeterred by these complexities, Defendant Maxwell proceeds to launch an attack on Ms. Giuffre's alleged failures to produce appropriate discovery in the litigation.  According to Maxwell, Ms. Giuffre's failures should lead this Court to force her attorney to produce the documents that Ms. Giuffre (allegedly) improperly withheld.  *See* Maxwell's Resp. at 13-14.

As one of Ms. Giuffre's attorneys, Edwards has tried to work diligently to assure that she has complied with all of her discovery obligations – and, Edwards strenuously contests that suggestion that she has failed to produce documents to which the Defendant is entitled.  But for purposes of this present motion to quash, the overarching point is that the Defendant Maxwell is improperly trying to litigate a *party's* obligation to produce various documents in a lawsuit filed in the Southern District of New York by subpoenaing the party's attorney in Florida – a non-party to the case – and then litigating the issue here.  A clearer example of an "undue burden" would be harder to find.  Maxwell is either entitled to the documents or not *from Ms. Giuffre*.  Satellite litigation against her attorney in a distant forum is not the proper way to resolve the issue.  If

Maxwell believes Ms. Giuffre should produce the documents, Maxwell should pursue that issue

directly with *Ms. Giuffre* – not with her attorney.

RFP #15 Should be Quashed.

The Court should quash RFP #15, which seeks documents relating to "any journalist,

reporter, producer, author, director, or any employee or agent of the same," connected to Virginia

Giuffre, Ghislaine Maxwell, or Jeffrey Epstein.

As Edwards explained in his motion to quash, this request is hopelessly vague and

overbroad.  *See* Motion to Quash at 16-17.  The categories of people included (e.g., any "author"

or "journalist" or "agent of the same") do not lend themselves to immediate and narrow

identification.  *Id.*  The request is also unbounded as to time, and thus sweeps in materials remote

from the *Giuffre v. Maxwell* case.  For example, the request includes nearly eight years of *pro*

*bono* work that Edwards has done on *Does v. United States,* No. 9:08-cv-80736 (S.D. Fla.) –

including approximately six years of work (2008 to 2014) before Edwards was even representing

Ms. Giuffre.  *Id.*  To answer RFP #11, Edwards would have to review more than 200,000 emails

he received and sent during that time.  *See* Edwards Decl. [DE 1-1] at ¶ 23.  How he would search

those emails and identify which came from "journalists" and "reporters" is not immediately clear

and the burden imposed on him would clearly be substantial.  *Id.*

Remarkably, Defendant Maxwell does not substantively respond to the vagueness and

overbreadth arguments.  Instead, Maxwell tries to explain why Edwards's contacts with the media

are relevant to the case.  Maxwell Resp. at 14-15.  But Defendant Maxwell does not explain how

communications from Edwards are needed in light of the evidence that has already been

developed.  Instead, she makes a gratuitous allegation that Ms. Giuffre's counsel have

"strategically employed communications to the press, leaking information when they thought it

would help generate interest in her book."  Maxwell Resp. at 15 (citing Pagliuca Decl., Ex. N).

But the evidence cited for the allegation that counsel have been "leaking information" is a court

pleading (Ex. N) filed in the Southern District of Florida.  Maxwell never explains how filing a

court pleading on behalf of a client constitutes a "leak."

The only specific argument Maxwell makes is to point to a "shocking" voicemail left by

Sharon Churcher for Edwards in early February 2015, in which Churcher states that "I think the

FBI affidavit is pretty close to perjury."  Maxwell Resp. at 7.[12]  But it is a matter of public record

that Churcher was following the CVRA case in Florida and that on January 30, 2015, there was an

"FBI affidavit" filed in that case.  *See Does v. United States*, No. 9:08-cv-80736 (S.D. Fla.), DE

304-1, *available in* Edwards Reply Decl., Ex. 8, Agent Slater Affidavit.  That affidavit did not

pertain to the details of Ms. Giuffre's sexual abuse, but rather the efforts of the FBI to maintain

contact with Ms. Giuffre. But, in any event, whether what FBI Agent Slater said about the FBI's

contacts with Ms. Giuffre was or was not true has essentially no relevance to the *Giuffre v.*

*Maxwell* lawsuit.  And other than baldly asserting that the voicemail as "a critically relevant

communication," Maxwell makes no attempt why details surrounding FBI Agent Slater's affidavit

have any real connection to the case.

Moreover, even if Agent Slater's affidavit somehow did skirt the truth (a subject on which

Ms. Giuffre takes no position here), that was an allegation being made by Ms. Churcher – not

Edwards.  Maxwell currently has pending before Judge Sweet in New York a motion to compel

Ms. Churcher to be deposed on all such subjects.  Maxwell made her argument before Judge

Sweet on June 21, and he took the issue under advisement.  If Judge Sweet grants her motion,

---

[12] As discussed above in connection with RFPs #1 and #2, Maxwell already has access to this voicemail and presumably all other communications surrounding it.  Accordingly, for the reasons explain above, the duplicative request for production by Cassell is an undue burden.

Maxwell will be able to get all the information she wants on this subject from Churcher directly, and there is no need to burden Edwards on the subject.  If the motion is denied, then the Court should consider that limitation in deciding whether to force Edwards to go on wild goose chase through nearly 300,000 emails to try and identify materials that would have only the most remote connection to this case.  This Court should weigh "the burden to [the non-party subpoena recipient] against the value of the information to [the issuer of the subpoena]" and find that "the subpoena imposes an 'undue burden' on the nonparty." *Moon*, 232 F.R.D. at 637.

### IV.  Edwards Reserves the Right to Raise Other Objections.

For all the reasons just explained, the Court should quash the subpoena issued to Edwards in its entirety under Fed. R. Civ. P 45(c)(3)(A)(iv).  If for any reason the Court finds that any portion of the subpoena survives this motion to quash, Edwards would then respectfully request any opportunity to raise such other general and specific objections to the subpoena as may be appropriate, including overbreadth concerns and attorney-client privilege, work-product protections, public interest privilege and common-interest privilege.

### <u>CONCLUSION</u>

For the forgoing reasons, Edwards respectfully requests that this Court grant the motion to quash or enter a protective order barring enforcement of the Subpoena.

DATED this 7th day of July, 2016.

/s/ Jack Scarola
Jack Scarola
Florida Bar No.: 169440
Attorney E-Mail(s):  jsx@searcylaw.com and
                      mep@searcylaw.com
Primary E-Mail: _scarolateam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409

Phone: (561) 686-6300
Fax:     (561) 383-9451

*Attorney for non-party respondent Bradley J. Edwards*

**CERTIFICATE OF SERVICE**

I certify that on July 7, 2016, I electrically served the foregoing pleading via e-mail on:

Laura A. Menninger
Jeffrey S. Pagliuca
Haddon, Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: (303) 831-7364
Fax: (303) 832-2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*