UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRADLEY J. EDWARDS<br><br>      Plaintiff,<br><br>  v.<br><br>GHISLAINE MAXWELL<br><br>      Defendant. | **BRADLEY J. EDWARDS'S REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**<br><br>No.  1:17-mc-00025-RWS |

  Subpoena respondent Bradley J. Edwards, a non-party and attorney for the Plaintiff in the *Giuffre v. Maxwell* action, hereby files this supplemental reply in support of his motion to quash.[1]

## BACKGROUND

  As the Court recalls, Defendant served subpoenas for documents on two of Ms. Giuffre's lawyers: Paul G. Cassell, Esq., and Bradley J. Edwards, Esq.  The subpoenas were overlapping in most respects and largely substantively indistinguishable.  This Court has previously ruled on a motion to quash the Cassell subpoena, quashing most of the demands made there.  With regard to the overlapping Edwards subpoena, defense counsel has agreed that "the majority of this has been disposed of by [the Court's] earlier opinion" on the Cassell subpoena.  Hearing Tr. Mar. 9, 2017, at 57:16-17.

---

[1] The motion to quash RFPs #19 and #20 (and all other RFPs) should be denied for reasons explained earlier in Mr. Edwards' Motion to Quash and Reply in Support of His Motion to Quash, which documents are incorporated by reference into this reply as if set forth verbatim.

Two of the demands made in the Edwards subpoena that were not overlapping were Edwards Request for Production ("RFP") #19 and #20.  These requests demanded that Mr. Edwards produce:

> 19.  Any letter or communication from you to any witness or prospective witness in Giuffre v. Maxwell, 15-cv-07433-RWS.
>
> 20.  Any letter or communication to you from any witness or prospective witness in Giuffre v. Maxwell, 15-cv—07433-RWS.

On June 13, 2016, Mr. Edwards filed a motion to quash the subpoena against him in his home judicial district, the Southern District of Florida.  *See* Bradley J. Edwards' Motion to Quash Subpoena or, in the Alternative, for a Protective Order, Misc. No. 01:16-mc-61262-JG (June 13, 2016).  With regard to RFPs #19 and #20, Mr. Edwards explained that both sides in the case had identified more than 100 persons who could potentially be regarded as "prospective witnesses" in the trial, including the client, Ms. Giuffre, and his co-counsel, Mr. Cassell.  *Id.* at 19.  Mr. Edwards also argued that this request appeared to be exclusively designed to burden him as an attorney for the opposing side in the case.  *Id.*  Mr. Edwards further argued that that there was no reason to require Mr. Edwards to produce any materials, since the witnesses could, if necessary, be questioned about any such communications.  *Id.*  Mr. Edwards accordingly asked for RFPs #19 and #20 to simply be quashed at the outset.  If RFPs #19 and #20 were not quashed, Mr. Edwards asked for leave to raise more specific objections, including attorney-client privilege and work-product protections associated with these requests.  *Id.* at 19-20.

In response to these arguments, Defendant gave a three-sentence response:

> Mr. Edwards, as part of his litigation practice, has sent "witness solicitation letters" to prospective witnesses in this matter. These letters contain a skewed version of the allegations in this case and are potential impeachment evidence in this case. Mr. Edwards has immediate access to this information and the production of these letters would not be burdensome.

Resp. of Ghislaine Maxwell to Bradley J. Edwards' Motion to Quash Subpoena at 16. Mr. Edwards thereafter filed a reply in support of his motion to quash, but did not add any additional briefing on RFPs #19 and #20.

Thereafter, the Motion to Quash was transferred to this Court (Sweet, J.). On March 9, 2017, this Court held argument on the Motion to Quash. During the argument, the Court granted leave for Mr. Edwards to file an additional reply on the issue of RFPs #19 and #20. Hearing Tr. Mar. 9, 2017, at 72:9-75:5.

Mr. Edwards now files this additional reply on RFPs #19 and #20.

## DISCUSSION

In regards to Subpoena Requests Number 19 and Number 20, Mr. Edwards will clearly be unduly burdened, as a non-party, if he were required to conduct extensive searches for documents for no real purpose as the documents sought are protected from discovery. In fact, Maxwell continues to fail to substantively or effectively address the arguments that Edwards presents regarding why the subpoena creates an undue burden on him. The Court should accordingly grant Edwards's motion to quash all outstanding items.

As should be clear from the facts in this case, as set out in some detail in Ms. Giuffre's (thus far uncontested) Statement of Undisputed Facts in response to the summary judgment motion, Defendant Maxwell has no answer to facts demonstrating her involvement in Jeffrey Epstein's sexual abuse of Ms. Giuffre and other minor girls. For example, Defendant has yet to explain what she was doing on 23 flights on Epstein's private jet with a teenaged Ms. Giuffre. Nor has Defendant explained the message pads showing not only Defendant's presence in Epstein's mansion but numerous underage girls leaving phone messages in connection with "massages" to be provided at the home. Unable to contest the case on its merits, Defendant has

instead resorted to a blizzard of discovery and other motions – including subpoenas served on Ms. Giuffre's legal counsel Mr. Edwards and Mr. Cassell.  The Court largely quashed the subpoena to Cassell.  The specific issue remaining before the Court is Mr. Edwards's Motion to Quash the subpoena served on him, and specifically RFPs #19 and #20.

As recounted in the briefing above, Mr. Edwards explained that RFPs #19 and #20 were plainly overbroad.  They seek Mr. Edwards's communications with "prospective witnesses" – a term that is undefined, largely undefinable and unsearchable.  If Defendant has complied with her Rule 26 obligations, then presumably the names of each of the "prospective witnesses" are on her list; however, we know that Defendant has not disclosed the names of the numerous females she recruited for Jeffrey Epstein so it is possible that the definition of "prospective witness" could be broader than Maxwell has already improperly defined pursuant to her Rule 26 disclosures.  However, even if confined to Defendant's Rule 26 disclosures, the term is still woefully overbroad, since the prospective witnesses in the case include, obviously, plaintiff Ms. Giuffre.  Mr. Edwards plainly has numerous communications with his client, which would be protected by attorney-client privilege.  Of course, creating a privilege log for his communications with his client would be unduly burdensome in this complex case, particularly given that it is obvious that his communications with his client would ultimately be protected.

A further illustration of the overbreadth of this request comes from the fact that Defendant has designated Mr. Cassell as a witness in this case, by including him on their witness list.  While this effort appears to be an entirely improper effort to somehow disqualify Mr. Cassell from working on this case,[2] for purpose of the subpoena, it would seem that, in the eyes

---

[2] Using designations of attorneys as "witnesses" is a contrived tactic being confronted by the courts.  Courts have recognized that "[d]isqualification motions have become increasingly popular tools of the litigation process, being used ... for purely strategic purposes." *Laker Airways Ltd. v. Pan Am. World Airways*, 103 F.R.D. 22, 28 (D.D.C. 1984) (denying motion to disqualify counsel). "Disqualification motions are subject to abuse for tactical purposes"

4

of the Defendant, Mr. Cassell is a "prospective witness" and therefore all communications between Mr. Edwards and Mr. Cassell are covered by the subpoena.  Mr. Edwards and Mr. Cassell have been working together as co-counsel, on a pro bono basis, for more than eight years in a case before Judge Marra in the Southern District of Florida under the Crime Victims' Rights Act.  *See* Jane Does v. United States, 9:08-cv-80736-KAM (filed S.D. Fla. July 2008).  They have more than eight years of communications between the two of them on this highly complicated case as well as related cases.  Of course, these communication are protected by the attorney-client privilege as co-counsel as well as work-product protection.  Forcing Mr. Edwards to create a privilege log for these obviously-protected materials would be an undue burden because it would be a time-consuming yet pointless exercise – since all of the materials are protected.  Obviously, the product of such a request is not "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)((1).

The only specific justification that Defendant provided in earlier briefing for this request amounting to an attempt to piggyback Defendant's trial preparation by gaining access to Plaintiff's trial preparation was the claim that Mr. Edwards has somehow provided to some unidentified "prospective witness" a "skewed version of the allegations."  Resp. at 16.  What exactly that means is not immediately clear, and Defendant offers no explanation.  But more important is the fact that this provides no basis for forcing Mr. Edwards to canvass his communications to try to identify "prospective witness" communications.   Any such

---

resulting in "complex satellite litigation extraneous to the case before the court." *Universal City Studios, Inc. v. Reimerdes*, 98 F. Supp. 2d 449, 455 (S.D.N.Y. 2000) (denying motion to disqualify counsel). Indeed, "courts have in recent years become more and more skeptical of motions to disqualify counsel, and they now approach them with cautious scrutiny." *Laker Airways Ltd.,* 103 F.R.D. at 28. *See also Ragdoll Prods. (UK) Ltd. v. Wal–Mart Stores, Inc.*, No. 99 CV 2101, 1999 WL 760209, at *1 (S.D.N.Y. Sept. 27, 1999) (holding that motions to disqualify are "subject to strict scrutiny").

communications would not be admissible in evidence, and therefore the discovery request is unlikely to lead to the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)((1).

In addition, any communications would clearly be protected attorney work-product. If the Court were to allow proceedings on these RFPs to move forward, Mr. Edwards would be compelled to develop a privilege log showing (for example) work product protection for his communications. In addition to this being an extraordinarily time-consuming exercise, that privilege log could show what prospective witnesses Mr. Edwards has contacted – and what witnesses he has not. It could further show when Mr. Edwards became aware of these witnesses. This information would be highly useful to the Defendant in this case, as it would show what progress Ms. Giuffre's attorneys have made in piercing the secrecy of the sex-trafficking conspiracy. As the Court is aware from previous pleadings, Defendant has failed in her Rule 26 disclosures to identify virtually any of the underage females who could provide testimony in this case – forcing Ms. Giuffre's attorneys to track them down. Defendant should not now benefit from these tactics by being able to force an attorney for the opposing side to produce a privilege log regarding such efforts.

If Defendant's efforts succeed, then it presumably every attorney in every civil case will propound a subpoena to the opposing side – demanding (as was done here) all communications with opposing witnesses. In fact, if this is allowed we would immediately serve that subpoena on the Defendant's attorneys. But the very purpose of work product protection is that in "performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be

6

the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947).

Applying these well-settled principles, Courts have protected attorneys from being forced to disclose their contact with prospective witnesses. *See, e.g., Stokes v. City of New York*, 2006 WL 2064976 (E.D.N.Y. 2006) ("affidavits and other witness statements prepared or obtained in anticipation of litigation are generally entitled to protection" under the work product doctrine); *EEOC v. Koch Meat Co., Inc.,* No. 91 C 4715, 1992 WL 332310, *3–4, 1992 U.S. Dist. LEXIS 17133, *11–12 (N.D. Ill. Nov.5, 1992) (finding that counsel's communications with employee witnesses to gain information for employer to respond to an EEOC questionnaire were protected by the attorney-client privilege and work product doctrine). For example, *Gerber v. Down East Community Hospital*, 266 F.R.D. 29 (D. Maine 2010), considered whether an adversary could force opposing counsel to disclose electronic correspondence with potential witnesses. In denying the request, *Gerber* began by noting that "witness statements prepared in anticipation of litigation or for trial are attorney work-product by nature. *Id.* at 32-33 (*citing McBride v. Medicalodges, Inc.,* Nos. 06–2535–JWL, 06–2536–JWL, 06–2538–JWL, 2008 WL 2157114, 2008 U.S. Dist. LEXIS 42247 (D. Kan. May 22, 2008) (Rushfelt, Mag. J.) (denying defendant's motion to compel the plaintiffs to produce a witness statement they took of a former employee because it was protected by the work product doctrine and the defendant did not establish that it could not obtain the substantial equivalent by other means); *EEOC v. Rose Casual Dining, L.P.,* No. 02–7485, 2004 WL 231287, *2–3, 2004 U.S. Dist. LEXIS 1983, *7–9 (E.D. Pa. Jan. 23, 2004) (finding that witness statements generated after employee was fired and at the direction of counsel in preparation for litigation were protected by the work product doctrine)). *Gerber* then

noted that such as request was "inherently designed to intrude upon Plaintiffs' work product." *Id.* at 33.

*Gerber* also rejected the fallback request of an itemization of the witness names and dates. The Court noted that this subject is handled by Rule 26, which requires both sides to make initial disclosures. *Id.* at 35-36. The Court explained that it was "not persuaded that there is a general rule that requires a privilege log to divulge the names of each witness from whom a party has sought a statement. When the work product at issue is interview correspondence for purposes of witness development, that communication *is* the work product." *Id.* at 36 (emphasis in original).

Here, by their very nature, Mr. Edwards' communication with prospective witnesses are covered by work product protection. The key issue is whether the material in question was "prepared because of existing or expected litigation." United States v. Adlman, 134 F.3d 1194, 1198 (2d Cir. 1998) (*quoting Hickman*, 329 U.S. at 510-11). Applying this test, "documents are "deemed prepared in 'anticipation of litigation' if 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Strougo v. Bea Assocs.,* 199 F.R.D. 515, 520-21 (S.D.N.Y.2001) (*quoting Adlman*, 134 F.3d at 1202). According to her response brief, Defendant is seeking "witness solicitation letters." Resp. at 16. By definition, such letters would be prepared because of existing or anticipated litigation. Lest there be any doubt on this subject, Mr. Edwards' affidavit makes clear that, to the extent "prospective witnesses" can be identified, any contact he may have had with such witnesses would have only been in anticipation and furtherance of litigation.

During the March 9, 2017, hearing on this subpoena, Defendant seemingly suggested that because Mr. Edwards' communication would have been sent to a witness who was not a client, work product protection would somehow be waived. But "because the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party." *Fojtasek v. NCL (Bahamas) Ltd.,* 262 F.R.D. 650, 653–54 (S.D. Fla. 2009) (*citing In re Grand Jury Subpoena,* 220 F.3d 406, 409 (5th Cir.2000)).

To permit Defendant Maxwell to fish for communications by Mr. Edwards with prospective witnesses would create an unprecedented procedure wherein litigants could simply forego conducting this own investigation into allegations, and then subpoena opposing counsel. In this case, Defendant Maxwell was free to depose any witness about anything that may or may not have been said to the witness by *any* person. However, she is not entitled to obtain copies of protected work product, and she is not entitled to supplement her own investigation with the investigation conducted by Plaintiff.

## **CONCLUSION**

The requests at issue are a blatant attempt to unduly burden Mr. Edwards and invade precisely what the work-product privilege aims to protect. Because of the nature of this request even the creation and production of a privilege log would itself unfairly unveil privileged, protected information, and this immense burden would be performed despite the obvious protection against its production. For the forgoing reasons, Mr. Edwards respectfully requests that this Court grant the Motion to Quash or enter a protective order barring enforcement of RFPs #19 and #20 of the Subpoena. If the Court believes that production of a privilege log is

necessary to rule on these issues, Mr. Edwards requests leave to produce such a privilege log once the court narrows or defines the scope of the requests.

DATED this 13th day of March, 2017.

Respectfully submitted,

S.J. QUINNEY COLLEGE OF LAW AT THE UNIVERSITY OF UTAH

/s/  *Paul G. Cassell*
Paul G. Cassell
383 S. University Street
Salt Lake City, Utah 84112[3]
Tel: (801) 858-5202
Fax: (801) 585-2750
Email: cassellp@law.utah.edu

*Attorney for Plaintiff Bradley J. Edwards*

---

[3] This daytime business address is provided for identification and correspondence purposes only and is not intended to imply institutional endorsement by the University of Utah for this private representation.

## CERTIFICATE OF SERVICE

I certify that on March 13, 2017, I electrically served the foregoing pleading via e-mail on:

Laura A. Menninger
Jeffrey S. Pagliuca
Haddon, Morgan and Foreman, P.C.
150 East 10th Avenue
Denver, CO 80203
Phone: (303) 831-7364
Fax: (303) 832-2628
lmenninger@hmflaw.com

*Attorneys for Ghislaine Maxwell*